**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**Phoenix Division**

| | |
|---|---|
| **DAVID SMALLS**,<br><br>Plaintiff,<br><br>v.<br><br>**GLOCK, INC.,**<br>Please Serve: R/A Carlos Guevara<br>Attn: Legal Dept.<br>6000 Highlands Parkway<br>Smyrna, GA 30082<br><br>AND<br><br>**ROBERT P. RADECKI**,<br>Please Serve: Robert P. Radecki<br>156 Bruce Jackson Road<br>Newnan, GA 30263-4917<br><br>Defendants. | Civil Action No. _______________<br><br>**TRIAL BY JURY DEMANDED** |

**COMPLAINT**

**(Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964; and Racial Discrimination in Violation of 42 U.S.C. § 1981)**

COMES NOW, the Plaintiff, DAVID SMALLS ("Mr. Smalls" or "Plaintiff"), by and through his undersigned counsel and moves this Honorable Court for judgment against the Defendant, Glock, Inc. ("Glock"), and Defendant, Robert P. Radecki ("Mr. Radecki," collectively referred to as "Defendants"), on the grounds and praying for the relief hereinafter set forth:

**Parties**

1. Plaintiff, Mr. Smalls, is, and at all times relevant hereto, an African American male citizen

of the United States, and is and was at all times relevant to this Compliant a resident of the state of Arizona, specifically residing at 7353 E. University Drive, Apt. 2082, Mesa, Arizona 85207, located in Maricopa County.

2. Defendant, Glock, is a Georgia corporation, with a principal place of business located at 6000 Highlands Parkway, Smyrna, Georgia 30082, with fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or proceeding calendar year.

3. Defendant, Mr. Radecki, is, and at all times relevant hereto was, a National Sales Manager for Glock. At all times relevant hereto, Mr. Radecki was acting, purporting, or pretending to act in performance of his duties as National Sales Manager of Glock and supervisor of Mr. Smalls.

**Jurisdiction and Venue**

4. This action is brought by Plaintiff for damages on account of Defendant Glock's racially discriminatory practices as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

5. This action is brought by Plaintiff for damages on account of Defendants' racially discriminatory practices as prohibited by 42 U.S.C. § 1981.

6. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, *et seq*.

7. Defendants are subject to the personal jurisdiction of this Court, having conducted business in Arizona and having caused the events out of which this claim arises in Maricopa County, Arizona.

8. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) and (d).

9. Plaintiff has satisfied all of the procedural and administrative requirements set forth in

Section 706 of Title VII, 42 U.S.C. § 2000e-5, in particular:

a. On or around January 11, 2018, Plaintiff filed a charge ("Charge") with the Civil Rights Division of the Arizona Attorney General's Office (the "Division"), which was subsequently cross-filed with the Equal Employment Opportunity Commission (the "EEOC"), Charge No. 540-2018-01500. A true and correct copy of the Charge is attached hereto as **Exhibit A** and incorporated herein by reference.

b. As such, the Charge was timely filed with the EEOC within three hundred (300) days from the latest date of discrimination relative to this matter.

c. The Charge was transferred by the EEOC to its Atlanta District Office on or about January 17, 2018.

d. On September 24, 2018, the EEOC issued Plaintiff a notice of dismissal and notice of his suit rights. A true and correct copy of the "Notice of Right to Sue" is attached hereto as **Exhibit B** and incorporated herein by reference.

e. The Complaint in this matter was filed with this Court within ninety (90) days from the receipt of the "Notice of Right to Sue".

**Statement of Facts**

10. Mr. Smalls is an African American male, and for all times relevant to the claims herein, lived and was employed in Arizona.

11. Mr. Smalls was hired by Glock in or around 2006 as an Armorer.

12. In or about January 2007, Glock transferred Mr. Smalls to a Quality Control position.

13. In or around August 2008, Glock promoted Mr. Smalls to the position of Commercial Sales Manager ("CSM") and assigned him oversight of a region encompassing Arizona (Mr. Smalls' home state), Nevada, Utah, Colorado, and New Mexico.

14. Mr. Smalls remained in his position as CSM until Glock terminated his employment on or about March 28, 2017, nearly ten (10) years after his promotion.

15. Over the course of eleven (11) years of employment with Glock, Mr. Smalls only ever received one (1) write up, on February 6, 2016, purportedly for submitting expense reports late.

16. Upon information and belief, during his tenure with Glock, Mr. Smalls was the only African American CSM out of an approximate total of thirty (30) outside sales employees of Glock, including, 3 Regional Managers, 6 CSMs and District Managers.

17. Upon further information and belief, Mr. Smalls was the only African American outside sales employee for all of Glock.

18. On many occasions during his tenure with Glock, Mr. Smalls was subjected to racial discrimination.

19. Specifically, Mr. Radecki, National Sales Manager, promoted Matt Chen ("Mr. Chen"), a non-African American CSM, to Regional Manager over the same region which Mr. Smalls served as CSM, despite Mr. Chen's only experience as a CSM being limited to one (1) year. By comparison, Mr. Smalls had five (5) years' experience as CSM in that same region.

20. Despite Mr. Smalls' experience and successful performance record, he was never considered by Mr. Radecki or other management of Glock for any promotion after 2008.

21. On many occasions, Mr. Radecki, despite being the National Sales Manager and overseeing Mr. Smalls' work, made many racially charged and insensitive statements in Mr. Smalls' presence.

22. Specifically, during the 2012 National Rifle Association Convention, Mr. Radecki had a conversation with Mr. Smalls, among twelve (12) to fifteen (15) other Caucasian coworkers, regarding the death of Trayvon Martin, a young African American male whose death was

nationally publicized as a hate crime.

23. Mr. Smalls was the only African American Glock employee present during this conversation, and as such, disagreed with Mr. Radecki's stance on Trayvon Martin's death.

24. Further, in or around 2012, during a training session for Glock employees (the "2012 Training Session"), Mr. Radecki publicly yelled racial profanity in Mr. Smalls', as well as other employees', presence. Specifically, Mr. Radecki yelled, "Fuck, Trayvon," in reference to the death of Trayvon Martin. Mr. Radecki made this loud, racially charged statement while the entire training group was taking a photograph for work.

25. Upon information and belief, Mr. Smalls was the only African American employee in attendance at the 2012 Training Session and the only African American employee in the presence of Mr. Radecki when he yelled the racially charged statement.

26. Upon information and belief, Mr. Radecki continued to make racially insensitive remarks in the presence of Mr. Smalls, as well as other, non-African American Glock employees, for the remainder of Mr. Smalls' employment.

27. On one occasion, Mr. Radecki showed up at a Glock team building event, located in Fort Worth, Texas, dressed in a Confederate soldier uniform, making Mr. Smalls, yet again the only African American employee, extremely uncomfortable.

28. Mr. Radecki was not the only Glock employee or management member who made racially insensitive remarks in Mr. Smalls' presence during the course of his employment.

29. Specifically, during the 2016 Western Regional Meeting (the "2016 Conference"), held in southern California, Mr. Smalls was subjected to a racially insensitive and highly offensive discussion when a Caucasian co-worker used the term, "nigger-lip," in reference to someone else's appearance.

30. Among those who heard this highly offensive comment was Mr. Chen. Mr. Chen immediately addressed the co-worker, stating only so far that, "Smalls could own this company for what you [the co-worker] just did."

31. Despite this statement, and upon information and belief, Mr. Chen took no further statements to address the matter with the co-worker, apologize to Mr. Smalls, or otherwise correct this racially insensitive action. In fact, Mr. Chen and the co-worker left and returned to the activity with a large cooler, singing songs and carrying on with their festivities.

32. Mr. Smalls, feeling humiliated and hurt by the lack of discipline for the extremely hurtful comment, retreated from the activity as soon as he was able, to avoid any further negative attention to himself.

33. The racially insensitive and charged remarks, by both management and other employees, continued throughout Mr. Smalls' employment with Glock.

34. Specifically, Mr. Chen, as well as other non-African American Glock superiors and employees, often made pejorative jokes directed at and/or in the presence of Mr. Smalls. These jokes included statements such as, "You [Mr. Smalls] know they don't serve malt liquor here," or "Would you [Mr. Smalls] feel more comfortable if we put your drink in a brown paper bag?"

35. These so-called jokes played off of stereotypes often attributed to African Americans and often left Mr. Smalls, as frequently the only African American employee present at sales functions, feeling humiliated.

36. On one occasion, in or around early 2017, Mr. Smalls and Mr. Chen were jointly conducting a dinner meeting ("2017 Sales Meeting") with the management of a large distributor of Glock products. During this meeting, a manager for the distributor, Matt Nicholson ("Mr. Nicholson"), made several racially insensitive statements and "jokes."

37. Specifically, during this 2017 Sales Meeting, Mr. Nicholson, a Caucasian male, referred to businesses negotiations as “Negrociations,” making a blatant, pejorative play on the terms, “Negro” and “negotiations,” while in Mr. Smalls’ and Mr. Chen’s presence.

38. Further, Mr. Nicholson made other hurtful comments related to race other than that of Mr. Smalls. Specifically, Mr. Nicholson, in the presence of Mr. Smalls and Mr. Chen, who is of Asian heritage, stated that, “Asian people are from aliens since they have big heads, small eyes, and are smart.”

39. Fearful to hurt Glock’s relationship with its distributor, and in turn, risk his employment, Mr. Smalls declined to comment on this behavior in the presence of Mr. Nicholson. However, after the 2017 Sales Meeting, Mr. Smalls discussed the matter with Mr. Chen, who, though he apologized to Mr. Smalls, ultimately never took any affirmative steps to remediate the distributor’s conduct.

40. Following the 2017 Sales Meeting, racially insensitive remarks and comments continued to be made in Mr. Smalls’ presence, despite management being on notice of such remarks and comments, as well as Mr. Smalls’ lack of comfort with these remarks and comments.

41. In or around March 28, 2017, after the 2017 Sales Meeting, Mr. Smalls was terminated from his position at Glock, allegedly based upon “poor performance.”

42. Despite its reasoning for the termination, Glock, at no time during the eleven (11) years in which it employed Mr. Smalls, informed Mr. Smalls of any performance issues on his part.

43. Specifically, during his eleven (11) year tenure with Glock, Mr. Smalls did not receive any notice, written or otherwise, from any one at Glock stating that he had “poor performance.”

44. In fact, Mr. Smalls had only received positive performance evaluations, with his last performance evaluation occurring just a few months prior in November 2016. At no point in

these performance evaluations was Mr. Smalls notified that he was not performing as expected.

45. Further, during his entire eleven (11) year career, Mr. Smalls only received one (1) formal reprimand, which was for failing to turn in expense reports on time.

46. Upon information and belief, Mr. Smalls was the only CSM to receive such reprimand for failing to turn in expense reports on time, despise other, non-African American, CSMs also *consistently* failing to turn in expense reports on time.

47. Additionally, Mr. Smalls often received positive feedback from Glock throughout his eleven (11) year tenure for his management of trade events.

48. Despite his successful track record during his eleven (11) year career with Glock, Mr. Smalls was terminated.

49. Upon information and belief, Mr. Smalls was terminated from Glock on the basis of his status as an African American employee.

**COUNT I**
**Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended**
***(As to Defendant Glock)***

50. Mr. Smalls hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

51. Mr. Smalls is an African American male.

52. On March 28, 2017, Mr. Smalls was terminated from his position as CSM with Glock on the alleged basis of "poor performance."

53. Upon information and belief, Mr. Smalls was the only African American CSM in the Western Region, to which he was assigned to work, and is believed to have been the only African American CSM in all sales regions for Glock.

54. In the eleven (11) years that Mr. Smalls was employed by Glock, he had only ever received positive performance evaluations.

55. In November 2016, just five (5) months prior to his termination, Mr. Smalls received another positive performance evaluation.

56. Mr. Smalls' final, positive performance evaluation was not marred by the one (1) and only reprimand he received in his entire eleven (11) years with Glock for failing to turn in expense reports by their deadlines.

57. Upon information and belief, other, non-African American CSMs also consistently failed to turn in expense reports by the given deadlines but were not reprimanded for the same.

58. Despite this minor reprimand in over a decade's worth of service to Glock, Mr. Smalls continued to perform without complaint from Glock in his role as CSM.

59. The first time Mr. Smalls was made aware of any alleged "poor performance" was upon his unexpected termination on or about March 28, 2017.

60. By its acts and omissions alleged herein, Defendant adversely affected Mr. Smalls' status as an employee on the basis of Plaintiff's race, in violation of 29 U.S.C §2000e-2(a)(1), when it terminated his employment on or about March 28, 2017, for alleged "poor performance."

61. As a direct and foreseeable result of Defendant's unlawful conduct, Mr. Smalls has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to his damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

62. As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Mr. Smalls has been injured in that he has suffered, and will continue to suffer, a loss of wages and

salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

63. In acting as alleged herein, Defendant has acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Mr. Smalls, from an improper motive amounting to malice, and in conscious disregard of Mr. Smalls' rights. Mr. Smalls is thus entitled to recover punitive damages from Defendant in amounts to be proved at trial.

64. As a result of Defendant's acts of discrimination as alleged herein, Mr. Smalls is entitled to reasonable attorney's fees and costs of suit as provided for by 29 U.S.C §2000e-5(k).

**COUNT II**
**Racial Discrimination in Violation of**
**42 U.S.C. § 1981**
***(As to All Defendants)***

65. Mr. Smalls restates, re-pleads, and incorporates by reference each and every allegation set forth above.

66. 42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts, which includes, but is not limited to, employment relationships.

67. Mr. Smalls was subjected to intentional discrimination because of his race and status as an African American. This discrimination began at the outset of his employment and was permeated by Defendants until his unlawful termination.

68. As outlined above, Defendant Mr. Radecki intentionally made discriminatory comments and actions with respect to Mr. Smalls' race and his continued employment as CSM at Glock.

69. As further outlined above, Defendant Glock was at all times aware of Mr. Radecki's discriminatory comments and actions, including but not limited to his hurtful remarks regarding a nationally publicized racially-motivated crime and his frequent appearance to work functions, where Mr. Smalls' attendance was mandatory, in Confederate army uniform.

70. Defendant Mr. Radecki's racial remarks and actions, coupled with Glock's willful and continued inaction to correct or address such racial animus from its management, employees, and distributors as well as its wrongful termination of Mr. Smalls' employment, amounts to intentional discrimination in violation of 42 U.S.C. § 1981.

71. As a direct and proximate result of this intentional discrimination, Mr. Smalls has suffered numerous damages including but not limited to, lost wages, employment benefits, bonuses, other compensation, costs, and reasonable attorney's fees, in an amount to be proven at trial.

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

A. Enter judgment on his behalf against Defendants, as applicable;

B. Award Plaintiff compensatory damages in an amount to be proven at trial;

C. Award Plaintiff punitive damages pursuant to Title VII and 42 U.S.C. § 1981;

D. Award Plaintiff back pay and front pay;

E. Award Plaintiff his court costs, expenses, attorneys' fees, prejudgment interest and post-judgement interest;

F. Declare that Defendant Glock's conduct is in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.;

G. Declare Defendants' conduct is in violation of 42 U.S.C. § 1981; and

H. Grant such other relief as this Court may consider just and proper.

**DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Date: December 21, 2018

Respectfully submitted,

DAVID SMALLS,

By: /s/___Robert Powers_______________

Robert Powers, Esq.
Andrea Harris, Esq.
MCCLANAHAN POWERS, PLLC
8133 Leesburg Pike, Suite 130
Vienna, VA 22182
Telephone: (703) 520-1326
Facsimile: (703) 828-0205
Email: rpowers@mcplegal.com
aharris@mcplegal.com
ljereen@mcplegal.com
*Counsel for Plaintiff*
*Admitted Pro Hac Vice*

**CERTIFICATE OF TRANSMISSION**

I hereby certify that the forgoing COMPLAINT with EXHIBITS are being electronically transmitted via the CM/ECF system of the U.S. District Court for Arizona at https://ecf.azd.uscourts.gov/ on the date noted below. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: December 21, 2018

By: /s/ _Robert Powers_____________
One of the Attorneys for Plaintiff,
David Smalls